CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2017

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| BILLY DUPREE COBBS, | ) | CASE NO. 7:17CV00525 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DR. MOSES, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Billy Dupree Cobbs, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he has received inadequate medical care for his hernia while in jail. Upon review of the record, the court finds that the action must be summarily dismissed.

I.

Cobbs arrived at the New River Regional Jail ("the jail") on June 1, 2016.[1] Before his incarceration, he had been diagnosed with a hernia, but it did not bother him until the middle of 2017. He began to experience "pain and a burning sensation" in his lower abdomen and asked for medical attention. Compl., Cobbs Aff. 1, ECF No. 1-2. Cobbs told Dr. Moses about the hernia diagnosis and pain. The doctor explained that the pain was caused by muscles cutting off circulation to Cobbs' intestines, but his current condition was not an emergency warranting surgery. When Cobbs told Dr. Moses that he had three more years to serve in prison, the doctor advised him to have the hernia repaired soon after his release, because it would only get worse.

Several weeks later, Cobbs began to suffer pain during urination and bowel movements. His vegetarian diet included two servings of beans every day that caused bloating, and passing gas was painful. Cobbs filed a request to change to the regular jail diet and see a nurse. The

---

[1] The facts as presented in Cobbs' submissions are stated in the light most favorable to him.

nurse provided medication to help him move his bowels and recommended that he should "hold the hernia in" while using the bathroom. Id. When Cobbs received no response to his diet change request, he stopped eating. A nurse he spoke to about the difficulties the vegetarian diet was causing told him to file a diet change request with Betty Akers. He did so, but got no response. After several trips to medical about his hernia symptoms, he saw Dr. Moses again. The doctor said that because the hernia "wasn't 'stuck' . . . it wasn't an emergency." Id. at 2. Cobbs asked the doctor for a diet change, and soon thereafter, began receiving regular diet meals.

Cobbs then developed constipation that irritated the hernia. He asked for medical care and received medication to help move his bowels. The nurse told Cobbs that "the constipation came from the hernia and that since it wasn't an emergency that the jail couldn't do anything about it." Id. Even with medication, Cobbs continued to suffer from constipation, stopped eating, and grew depressed. He says he "was in real bad pain" and was aggravated at his inability to get help. Id. He checked himself into administrative segregation and met with a mental health counselor, but was not suicidal. Back in "G-block," Cobbs continued not eating. He began experiencing pain in his testicles when he walked and "requested to see somebody about it but [he] never got a response." Id. at 3. He "asked Major Stallard for a grievance and never received one. Instead [he] was sent to medical" to see a doctor. Id. This doctor did not ask about the hernia, but ordered an X-ray related to Cobbs' complaints of constipation.

Cobbs went back to his cell and days passed. He wrote Stallard again, asking for a grievance. Nurse Lisa Fergerson responded to this request, telling Cobbs that the X-ray results showed that he was "O.K." Id. Cobbs states: "I kept telling them my testicles hurt and I was in pain. I called my mother. She call[ed] up to the jail and I was given an ultra sound." Id.

2

Cobbs next wrote requests to medical that after several days of not eating, his urine was dark as though it had blood in it. The medical staff took a urine sample and referred him to Dr. Moses. Cobbs told the doctor that the hernia "hurt[ ] bad[, he] had to hold it in when [he] walk[ed,] and [it made] it . . . hard to jump up and down from [his] bunk." Id. at 4. The doctor again explained that the hernia was not presently "stuck," so was not an emergency for which the jail would arrange for surgery. Id. Dr. Moses said that if it got stuck, Cobbs "would be in serious pain to where [he] wouldn't be able to walk or sit up." Id. Cobbs asked Dr. Moses to "fax [his] medical records to the DOC," but the doctor said no, because the DOC "wouldn't do anything about it" either. Id. Days later, Cobbs saw Nurse Fergerson again, and she told him that his test showed he was "O.K." Id. He "requested his medical records and was denied."[2] Compl. Exh. 1, ECF No. 1-1.

On November 20, 2017, Cobbs signed his § 1983 Complaint, alleging the following claims: (1) Dr. Moses said the hernia was not serious enough for surgery and Cobbs could live with it; (2) Nurse Fergerson told Cobbs that test results showed no complications from the hernia, said he would be OK, and denied his request for copies of medical records; and (3) Major Stallard never gave Cobbs a grievance form. As relief, he seeks monetary damages and "administrative punishments" for the defendants. Compl. Attach., ECF No. 1-3.

II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim under § 1983, the plaintiff must allege facts showing that a person acting under color of

---

[2] Cobbs' submissions indicate that, per policy, inmates in the jail cannot possess copies of their medical records. See Compl. Exh., at 4, ECF No. 1-5.

state law undertook conduct that violated the plaintiff's constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). Because liability under § 1983 is personal, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A prison official's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official is "deliberately indifferent" if he or she "knows of and disregards [or responds unreasonably to] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment,'" Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) (quoting Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975)), or mere negligence in diagnosis or treatment. Estelle, 429 U.S. at 105-106; see also Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable").

A significant delay in the treatment of a serious medical condition may indicate an Eighth Amendment violation, but only "if the delay results in some substantial harm to the patient." Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008).

> [A] delay with respect to hernia surgery does not necessarily constitute deliberate indifference, absent some resultant harm or a worsened condition. For example, in Price v. Carey, [the court] deemed an eight-month delay in providing elective hernia surgery as insufficient to constitute an Eighth Amendment violation, because the prisoner "did not present any information" to his physician during the intervening period "to indicate that his situation was an emergency mandating

> immediate treatment." No. 91-6643, 1992 WL 34208, at *4 (4th Cir. Feb. 26, 1992). On the other hand, in Garrett v. Elko, [the court] recognized an Eighth Amendment claim where the prisoner's hernia surgery was delayed for four years, in the face of continual "complaints of intense pain, anxiety, and limited mobility." No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997).

Id. at 167. Thus, a hernia sufferer like Cobbs states a § 1983 claim only if he presents evidence showing that "the delay in his surgery caused him substantial harm—evidenced by, for example, a marked increase in his hernia's size, frequent complaints of severe pain, or signs that his hernia was becoming non-reducible or incarcerated." Id.

Cobbs' complaint and exhibits do not provide a factual basis for an Eighth Amendment claim. During the six months since he began to complain to jail officials about his hernia issues, the medical staff has provided medication for his constipation, referred him to the doctor several times, ordered diagnostic tests, and monitored his condition. Although not as quickly as he would have liked, he received a diet change. The doctor and the nurse have offered Cobbs tips to alleviate the discomforts caused by the hernia, but they have informed him several times that his condition is not an emergency and does not require immediate surgery. At the same time, these defendants have told him that should his symptoms change in ways indicating complications with the hernia, the jail would arrange for him to have surgery. Cobbs' apparent belief that he should have had surgery by now is nothing more than a disagreement with the defendants' medical judgment that surgery is not currently a medical necessity. Such disagreements between a patient and his medical providers are not actionable under § 1983. Because Cobbs does not offer evidence that delay of surgery has caused, or will cause, him any substantial harm, he fails to state any Eighth Amendment claim against anyone.

Cobbs also has no viable § 1983 claim about access to grievances or possession of his medical records in jail. "[I]nmates have no constitutional entitlement or due process interest in

5

access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Similarly, prison officials may lawfully prohibit inmates from possessing certain types of property items in their cells for security reasons, such as copies of their medical records. See, e.g., Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment . . . does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.")

III.

For the reasons stated, the court will dismiss Cobbs's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. The clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 14th day of December, 2017.

*Glen Conrad*
Senior United States District Judge